

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| TREVON HENRY, ) | |
| ) | |
| Appellant, ) | **WD84685** |
| v. ) | |
| ) | **OPINION FILED:** |
| ) | **February 14, 2023** |
| STATE OF MISSOURI, ) | |
| ) | |
| Respondent. ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Jennifer M. Phillips, Judge**

**Before Special Division:** Gary D. Witt, Chief Judge, and
Mark D. Pfeiffer and Cynthia L. Martin, Judges

Mr. Trevon Henry ("Henry") appeals from the judgment of the Circuit Court of Jackson County, Missouri ("motion court"), denying, after an evidentiary hearing, his Rule 24.035 amended motion for postconviction relief. Because the legislature's 2016 modifications to the juvenile murder sentencing scheme are retroactive to juvenile criminal offenses committed prior to the effective date of the new juvenile sentencing statutes, Henry's 2019 sentence for his 2015 juvenile murder offense was lawful, and we thus affirm the motion court's judgment.

**Factual and Procedural Background**[1]

Henry was born on November 30, 2000. On November 1, 2015, Henry was out walking with a thirteen-year-old friend around 1:30 a.m. They approached a woman in the parking lot of a car wash and convinced her to let them into her car. Henry's friend sat in the front seat next to the woman, and Henry sat in the passenger seat behind the driver's seat. Henry then pulled out a knife and held it to the woman's neck with the intent to steal the car from her. The woman struggled to get free, and during the course of the struggle, Henry cut her throat. Henry became concerned about getting caught and decided to keep stabbing the woman in a heinous and gruesome fashion, ultimately inflicting *forty-eight* more knife wounds. After the woman succumbed, Henry and his friend moved her body from behind the steering wheel to the front passenger seat, and Henry started driving the car. Within a few minutes, Henry was pulled over by the police and, though Henry attempted to flee, was eventually apprehended.

On April 19, 2016, the juvenile officer filed a petition in juvenile court, alleging that fifteen-year-old Henry committed certain offenses which would have been felonies if committed by an adult, including murder in the first degree. After conducting a mandatory hearing on certification pursuant to section 211.070, on May 6, 2016, the juvenile court dismissed the petition filed by the juvenile officer and entered its order transferring jurisdiction over Henry to a court of general jurisdiction for the purpose of prosecuting him as an adult. On the same day, a criminal complaint was filed against Henry in the circuit

---

[1] On appeal from the motion court's denial of a Rule 24.035 motion, we view the facts in the light most favorable to the motion court's judgment. *Dawson v. State*, 611 S.W.3d 761, 764 n.3 (Mo. App. W.D. 2020).

court. On June 17, 2016, Henry was indicted on one count of class A felony of murder in the first degree for knowingly causing the victim's death by stabbing her; one count of the felony of armed criminal action ("ACA") for committing first-degree murder by the knowing use of a dangerous instrument; one count of the class A felony of robbery in the first degree for forcibly stealing a Toyota Camry owned by the victim and in the course thereof using a dangerous instrument against her; and one count of the felony of ACA for committing first-degree robbery by the knowing use of a dangerous instrument. On October 3, 2018, Henry waived his right to a jury trial and sentencing.

On October 15, 2018, the day set for a bench trial in Henry's underlying criminal case, Henry pleaded guilty to all counts as charged. Pursuant to a plea agreement, the State and Henry agreed that final sentencing was to be determined by the plea court, with the following stipulations. The parties agreed that Henry "shall be sentenced" on murder in the first degree "pursuant to statute 565.033."[2] The parties also agreed that the range of punishment for murder in the first degree "shall be life imprisonment with eligibility of parole, or not less than 30 years, not to exceed 40 years." The parties further agreed that the range of punishment for the other crimes of ACA was "a minimum of three years up to no lid, that includes life," and the range of punishment for robbery in the first degree was ten to thirty years or life. There was no agreement on the sentences running concurrent or

---

[2] As discussed in today's ruling, section 565.033 was the 2016 juvenile sentencing scheme adopted by Missouri's legislature in response to the Supreme Court of the United States decisions in *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), and "sets out an entirely new statutory scheme for sentencing juveniles found guilty of first-degree murder." *Hicklin v. Schmitt*, 613 S.W.3d 780, 784 (Mo. banc 2020).

consecutive, with the full range of punishment left to the discretion of the plea court. The plea court expressed its understanding that in exchange for Henry's guilty plea the State was *not* seeking life without possibility of parole and the prosecutor so stipulated.

During the plea court's examination of Henry at the guilty-plea hearing, Henry expressed his understanding that, under the plea agreement, he could not be sentenced to life without parole but could receive a sentence of life with parole or a sentence of between thirty and forty years. He acknowledged that in exchange for his plea agreement, the State agreed to no longer seek a sentence of life without possibility of parole, and that the range of punishment available to the plea court for murder in the first degree was life imprisonment with the eligibility for parole or between thirty- and forty-years' imprisonment. He also acknowledged his understanding of the range of punishment for each of the offenses to which he was pleading guilty and that those sentences could run consecutively or concurrently. He acknowledged the rights he was waiving by pleading guilty. The factual basis for Henry's guilty pleas was established upon Henry's questioning by plea counsel. Henry stated that he was pleading guilty because he was guilty; he was pleading guilty voluntarily; and no force, threats, or any promises apart from the plea agreement were used to induce his guilty plea. Henry entered guilty pleas to each of the charges, and the plea court found that his decision to plead guilty was made freely, voluntarily, and intelligently; that there was a factual basis for the pleas; and that he was guilty of the crimes charged beyond a reasonable doubt. The plea court accepted Henry's guilty pleas.

4

On January 4, 2019, the plea court held a sentencing hearing, at which the State and Henry presented evidence. On January 7, 2019, the plea court entered its judgment, sentencing Henry to life imprisonment (with eligibility for parole) for first-degree murder, life imprisonment (with eligibility for parole) for first-degree robbery, and fifty years' imprisonment for each count of ACA. The court ordered that the ACA sentences run concurrently with their associated felony charges and that the sentences for first-degree robbery and its associated ACA run consecutively to the sentence for first-degree murder and its associated ACA.

Henry timely filed a *pro se* Rule 24.035 motion for postconviction relief. Appointed counsel timely filed an amended motion. The amended motion asserted three grounds for vacating Henry's convictions and sentences, alleging: (1) mutual mistake resulting in an illegal sentence; (2) ineffective assistance based on plea counsel negotiating and permitting Henry to plead guilty pursuant to an illegal sentencing structure and conviction; and (3) plea court error in accepting an illegal guilty plea. On July 30, 2020, the motion court conducted an evidentiary hearing, at which no evidence was presented, only arguments by counsel related to the amended motion. On June 25, 2021, the motion court entered its findings of fact, conclusions of law, and judgment denying Henry's amended postconviction motion.

Henry timely appealed.

## Standard of Review

Appellate review of the denial of a Rule 24.035 motion is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous."

5

Rule 24.035(k).[3]  "The motion court's findings and conclusions are clearly erroneous only if, after reviewing the entire record, the appellate court is left with the definite and firm impression that a mistake has been made."  *Cooper v. State*, 621 S.W.3d 624, 630 (Mo. App. W.D. 2021) (internal quotation marks omitted).  "We will affirm the motion court's judgment if it is sustainable on any grounds."  *Thompson v. State*, 570 S.W.3d 166, 168 (Mo. App. W.D. 2019) (citing *Dorsey v. State*, 448 S.W.3d 276, 282 (Mo. banc 2014)).  "The movant has the burden of proving movant's claims for relief by a preponderance of the evidence."  Rule 24.035(i).

### Analysis

Henry asserts three points on appeal.  First, he contends that the motion court clearly erred when it denied Henry's claim of mutual mistake by plea counsel, the prosecutor, and the plea court as to the legality of the plea agreement, which resulted in an illegal conviction and sentence.  Second, he argues that the motion court clearly erred when it denied Henry's ineffective assistance of counsel claim because plea counsel misunderstood the law and negotiated an illegal plea agreement.  Third, he avers that the motion court clearly erred when it denied Henry's claim that the plea court erred in accepting the illegal guilty plea.

The dispositive issue on appeal is whether the 2016 repeal of section 565.020, the enactment of a new section 565.020, and the enactment of section 565.033 and section 558.047 reflect a legislative intent to apply said provisions retroactively to authorize constitutionally permissible sentencing for juvenile offenders who have already committed first-degree murder.  Henry argues that under no circumstance can the new

---

[3] All rule references are to I MISSOURI COURT RULES-STATE 2022.

juvenile sentencing scheme apply to a crime committed before the revised scheme was enacted, and that as a result, his agreement to submit to the revised juvenile sentencing scheme was illegal, requiring his guilty plea to be withdrawn, and subjecting him at most to sentencing for second-degree murder. We disagree.

In 2015, when Henry was fourteen years old, he stabbed and killed the victim. At the time he committed the offense, the first-degree murder statute, section 565.020.2 RSMo 1994, provided in pertinent part that "if a person has not reached his sixteenth birthday at the time of the commission of the crime, the punishment shall be imprisonment for life without eligibility for probation or parole, or release except by act of the governor."

When Henry committed his offenses, the sentencing scheme for juvenile offenders in section 565.020.2 RSMo 1994 had been effectively deemed unconstitutional. In *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L.Ed.2d 407 (2012), the United States Supreme Court held that offenders who were juveniles at the time of their crimes were ineligible for a sentence of life without parole unless they were among the small group of juveniles a fact-finder determined to be eligible for that sentence after considering the offender's age, maturity, and other factors identified by the Supreme Court. *Miller*, 567 U.S. at 473-74. Four years later in *Montgomery v. Louisiana*, 136 S. Ct. 718, 193 L.Ed.2d 599 (2016), the holding in *Miller* was made retroactive to persons who sought collateral review of their juvenile life-without-parole sentences that had been imposed before *Miller*. *Montgomery*, 136 S. Ct. at 736.

"Unfortunately, during the four years following *Miller*, Missouri's General Assembly did not reach agreement as to how to revise section 565.020 and related statutes

7

to provide for a constitutionally permissible sentence for the group of juvenile offenders who were ineligible for life-without-parole sentences." *Hicklin v. Schmitt*, 613 S.W.3d 780, 783 (Mo. banc 2020). Accordingly, when *State v. Hart*, 404 S.W.3d 232 (Mo. banc 2013), presented the Missouri Supreme Court with the question of how to sentence one of these juvenile offenders, "it simply remanded the juvenile offender's direct appeal of his conviction for resentencing so that a jury could determine, in accordance with *Miller*, whether a life-without-parole sentence was appropriate for the juvenile offender under all the circumstances, as it had no other sentence it could impose." *Hicklin*, 613 S.W.3d at 783 (citing *Hart*, 404 S.W.3d at 238-39). *Hart* further held that if the sentencer rejects a life without parole sentence after deliberation, then and only then should section 565.020 be declared void as applied, leaving the defendant susceptible to conviction and sentence on the lesser-included charge of second-degree murder. 404 S.W.3d at 242.

*Hart* made clear, however, that the procedure it authorized in the case before it was "intended only as a stop-gap measure." *Id*. at 243. "Under our constitution, only the legislature has the authority to decide whether and how to respond to *Miller* by authorizing additional punishments for juvenile offenders found guilty of first-degree murder." *Hart*, 404 S.W.3d at 243. "***Until the legislature exercises that authority***, the procedure outlined above represents an appropriate way to enforce the Eighth Amendment as interpreted in *Miller* while respecting the constitutional separation of powers." *Id*. (Emphasis added.)

*Hart* thus expressly recognized that the General Assembly has the authority to remediate a sentencing scheme that is unconstitutional as applied, and to do so retroactively. Thus, as urged by *Hart*, and "[i]n response to *Miller* and *Montgomery*,"

8

Missouri's General Assembly passed Senate Bill No. 590 in 2016.[4] *Hicklin*, 613 S.W.3d at 784. Among other things, Senate Bill ("S.B.") No. 590 repealed section 565.020 and enacted a new section 565.020. The new version of section 565.020[5] provides:

> 1. A person commits the offense of murder in the first degree if he or she knowingly causes the death of another person after deliberation upon the matter.
>
> 2. The offense of murder in the first degree is a class A felony, and, if a person is eighteen years of age or older at the time of the offense, the punishment shall be either death or imprisonment for life without eligibility for probation or parole, or release except by act of the governor. *If a person has not reached his or her eighteenth birthday at the time of the commission of the offense, the punishment shall be as provided under section 565.033.*

(Emphasis added.)

S.B. 590 enacted new section 565.033. "Section 565.033 . . . sets out an entirely new statutory scheme for sentencing juveniles found guilty of first-degree murder." *Hicklin*, 613 S.W.3d at 784. "Section 565.033.2 requires the judge or jury to consider 10 discrete factors—the majority of which uniquely relate to youth and its attendant circumstances—when assessing which of three punishments to impose on a juvenile

---

[4] "Although not entered into the record, we take judicial notice of [S.B. No. 590] pursuant to *Schweich v. Nixon*, 408 S.W.3d 769, 778 n.11 (Mo. banc 2013)." *Hill v. Ashcroft*, 526 S.W.3d 299, 307 n.7 (Mo. App. W.D. 2017). "It is unnecessary to either plead or make proof of a public statute, for the courts must take judicial notice of them." *Schweich*, 408 S.W.3d at 778 n.11 (internal quotation marks omitted). "This applies both to enacted laws of this state and also to the proceedings by which they were enacted[,] and to bills as well as to codified statutes." *Id.* (citations omitted) (internal quotation marks omitted). The statutes at issue in this appeal, sections 565.020 and 565.033, were passed in the same legislative session as part of the same legislative act. S.B. No. 590 repealed sections 565.020, 565.030, 565.032, and 565.040 and enacted seven new sections in lieu thereof, to be known as sections 558.047, 565.020, 565.030, 565.032, 565.033, 565.034, and 565.040. S.B. No. 590 § A.

[5] All statutory references are to the REVISED STATUTES OF MISSOURI 2016, unless otherwise noted.

offender who has been found guilty of first-degree murder." *Id*. The possible sentences for a person found guilty of murder in the first degree who was under the age of eighteen at the time of the commission of the offense are: "[1] a term of life without eligibility for probation or parole as provided in section 565.034, [2] life imprisonment with eligibility for parole, or [3] not less than thirty years and not to exceed forty years imprisonment." § 565.033.1.

Finally, as is relevant to this case, S.B. 590 enacted new section 558.047 as follows:

1. Any person sentenced to a term of imprisonment for life without eligibility for parole before August 28, 2016, who was under eighteen years of age at the time of the commission of the offense or offenses, may submit to the parole board a petition for a review of his or her sentence, regardless of whether the case is final for purposes of appeal, after serving twenty-five years of incarceration on the sentence of life without parole.

2. Any person found guilty of murder in the first degree who was sentenced on or after August 28, 2016, to a term of life imprisonment with eligibility for parole or a term of imprisonment of not less than thirty years and not to exceed forty years, who was under eighteen years of age at the time of the commission of the offense or offenses may submit to the parole board a petition for a review of his or her sentence, regardless of whether the case is final for purposes of appeal, after serving twenty-five years of incarceration, and a subsequent petition after serving thirty-five years of incarceration.

The plain language of section 558.047.2 expresses the clear intent to apply to sentences imposed after the enactment of S.B. 590 without regard to the date of the commission of the offense of first-degree murder. "Section 565.033 was enacted simultaneously with Section 558.047 to address *Miller* and the future sentencing of individuals found guilty of first[-]degree murder in Missouri who are under the age of eighteen at the time of the murder." *Jones v. Mo. Dep't of Corr.*, 588 S.W.3d 203, 207 (Mo. App. W.D. 2019).

Despite *Hart's* unequivocal invitation to the General Assembly to enact a retroactively applicable juvenile sentencing scheme that would be constitutionally permissible in light of *Miller*, and despite the General Assembly's corresponding action in doing so, Henry takes the position that the provisions of S.B. 590 addressed in this case cannot be applied retroactively to him (or to any juvenile offender who committed first-degree murder before the bill was enacted), and instead that all juvenile offenders who committed first-degree murder prior to the enactment of S.B. 590 are at best subject to the procedure set forth in *Hart*. Henry makes the further argument that because the State pled his case, he is now at best subject to resentencing for second-degree murder. To advance this argument, Henry contends that section 1.160 required that he be sentenced according to the law in effect at the time the offense was committed. His argument is without merit.

Section 1.160 governs the effect of the repeal of a penal statute and provides:

No offense committed and no fine, penalty or forfeiture incurred, or prosecution commenced or pending previous to or at the time when any statutory provision is repealed or amended, shall be affected by the repeal or amendment, but the trial and punishment of all such offenses, and the recovery of the fines, penalties or forfeitures shall be had, in all respects, as if the provision had not been repealed or amended, except that all such proceedings shall be conducted according to existing procedural laws.

In *Mitchell v. Phillips*, 596 S.W.3d 120 (Mo. banc 2020), the Missouri Supreme Court addressed the scope of section 1.160. "While section 1.160 prohibits the retroactive application of a statute's repeal or amendment under certain circumstances, its scope is limited. It is a general savings statute and serves a narrow purpose." *Id.* at 125. A retroactive statute is not an unconstitutional ex post facto law unless it applies to conduct completed before the statute's enactment *and* it increases the penalty for the crime

11

committed by the defendant. *State v. Harris*, 414 S.W.3d 447, 449-50 (Mo. banc 2013). The Eastern District of this Court relied on the settled principle expressed in *Harris* to find that it neither violates section 1.160 nor is an unconstitutional ex post facto law to retroactively apply the new juvenile sentencing scheme enacted with S.B. 590 in 2016 to juveniles who committed first-degree murder before the bill was enacted. *State v. Campbell*, 558 S.W.3d 554, 560 (Mo. App. E.D. 2018).

In so holding, *Campbell* effectively presumed, without discussion, that the new juvenile sentencing scheme set forth in S.B. 590 was intended by the General Assembly to apply retroactively. We agree with that presumption. "Statutory interpretation . . . is an issue of law this Court reviews *de novo*." *Hicklin*, 613 S.W.3d at 788. "This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *State ex rel. T.J. v. Cundiff*, 632 S.W.3d 353, 357 (Mo. banc 2021) (internal quotation marks omitted). "In construing a statute, the Court must presume the legislature was aware of the state of the law at the time of its enactment." *Id.* (internal quotation marks omitted). "Accordingly, when the legislature amends a statute, we presume the legislature intended to change the existing law." *Id.*

S.B. No. 590 was enacted "[b]ecause of the need to adopt a punishment scheme for first degree murderers of a certain age after the United States Supreme Court declared as unconstitutional the only punishment available under Missouri law for such offenders." S.B. No. 590 § C. We read the provisions of S.B. 590 in *pari materia*. *State ex rel. Dir. of Revenue v. Gaertner*, 32 S.W.3d 564, 566 (Mo. banc 2000) (holding that statutes relating to the same subject matter are to be construed together even if they appear in different

chapters). Given the context for its enactment, we conclude that the General Assembly intended S.B. 590, and in particular reenacted 565.020.2 and newly enacted sections 565.033 and 558.047, to apply retroactively to juvenile offenders who committed the offense of first-degree murder.

Our interpretation is reinforced by the Missouri General Assembly's acceptance of "the Supreme Court's invitation to remedy *Miller*-affected sentences by supplying parole eligibility." *Hicklin*, 613 S.W.3d at 787. "[T]he Supreme Court in *Montgomery* specifically stated that *Miller*'s retroactive effect 'd[id] not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole.'" *Id.* at 788 (quoting *Montgomery*, 136 S. Ct. at 736). "Rather, it said, a state 'may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them.'" *Id.* (quoting *Montgomery*, 136 S. Ct. at 736). As previously noted, the General Assembly did just that with its enactment of section 558.047.1, and by its enactment of section 558.047.2, which by its plain terms applies retroactively to offenses committed *before* the effective date of S.B. 590, though sentence is imposed *after* the effective date of the bill. It is absurd to suggest that the General Assembly had the authority to retroactively remediate sentences already imposed by the time S.B. 590 was enacted but had no authority to remediate sentences yet to be imposed for juvenile offenders who committed the offense of first-degree murder prior to the enactment of S.B. 590.

"Statutes cannot be interpreted in ways that yield unreasonable or absurd results[.]" *Cundiff*, 632 S.W.3d at 358 (internal quotation marks omitted). Hence, "[w]e will not

13

interpret a statute . . . so as to reach an absurd result contrary to its clear purpose." *West v. State*, 605 S.W.3d 607, 612 (Mo. App. W.D. 2020) (internal quotation marks omitted).

Henry plainly *benefitted* from his *stipulation* at the time of sentencing that the 2016 juvenile murder sentencing scheme be considered by the plea court at the time of his sentencing in 2019 for a crime he committed in 2015. It is no coincidence that Henry and the State stipulated to the new sentencing options as those sentencing options were, in fact, available to the plea court for consideration at the time of Henry's sentencing.

"We will affirm the motion court's judgment if it is sustainable on any grounds." *Thompson*, 570 S.W.3d at 168. We conclude that the legislative intent as reflected in the plain language of S.B. No. 590 was that the new juvenile sentencing scheme for first-degree murder found in sections 565.020 and 565.033 applied to Henry's criminal sentencing that occurred in January 2019. Consequently, Henry's sentence was not "illegal."

Points I, II, and III are denied.

## Conclusion

The motion court did not clearly err in denying Henry's Rule 24.035 motion. Its judgment is affirmed.

/s/ *Mark D. Pfeiffer*
_____
Mark D. Pfeiffer, Judge

Gary D. Witt, Chief Judge, and Cynthia L. Martin, Judge, concur.

14